**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

**CASE NO. 21-14017-CIV-CANNON/Maynard**

**JOSEPH E. HAAS**,

       Petitioner,

v.

**SECRETARY, FLORIDA DEPARTMENT**
**OF CORRECTIONS**

       Respondent.

_____/

**ORDER ACCEPTING REPORT AND RECOMMENDATION WITH ADDITIONS,**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS,**
**AND GRANTING CERTIFICATE OF APPEALABILITY ON GROUND ONE**

      **THIS CAUSE** comes before the Court upon Petitioner Joseph E. Haas's Counseled Petition for Writ of Habeas Corpus (the "Petition") and Accompanying Memorandum of Law and Exhibits [ECF No. 1].[1]  Following referral [ECF No. 15], Judge Maynard issued a report ("the Report") recommending that the Petition be denied on all four grounds asserted in the Petition [ECF No. 16].  Petitioner timely filed objections to the Report [ECF No. 20].  Respondent did not file objections and did not respond to Petitioner's objections.  The Court has reviewed the Report [ECF No. 16], Petitioner's Objections [ECF No. 20], and the full record, including the materials from Petitioner's state court proceeding attached by Petitioner, and the Appendix, and the trial transcripts filed by Respondent [ECF No. 1-2 through 1-13; ECF No. 10-1; ECF No. 11-1].   For the reasons set forth below, and following extensive review, the Report is **ACCEPTED** with

---

[1] The memorandum of law filed at ECF No. 3 is attached to the Petition as ECF No. 1-1.

additions [ECF No. 16], and the Petition is denied as set forth below.  The Court does, however, find it necessary to issue a certificate of appealability on Ground One—Petitioner's asserted Double Jeopardy violation—because Petitioner has made a substantial showing of the denial of a federal constitutional right as to that claim.  28 U.S.C. § 2253(c)(2).  This Order therefore dedicates the bulk of its analysis to evaluating and supplementing the analysis on the double jeopardy issue presented—specifically, whether the Florida legislature expressed a clear legislative intent in Fla. Stat. § 806.031(3) to punish separately the offenses of first-degree arson, in violation of Fla. Stat. § 806.01(1)(a), and arson resulting in great bodily harm, in violation of Fla. Stat. § 806.031(2).  Beyond that issue as supplemented herein, this Order accepts the Report's analysis as to all grounds in the Petition.

**RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

### A.  Underlying State Criminal Case

Petitioner was convicted of various crimes stemming from a fire that occurred at his house (the "Blue Water residence") on December 27, 2012, in Martin County, Florida [ECF No. 1-10 pp. 2–12; ECF No. 11-1 p. 1054; *see* ECF No. 1-2 pp. 2–5].[2]  Specifically, on January 21, 2014, Petitioner was charged by Amended Information with (1) arson of a dwelling, in violation of Fla. Stat. § 806.01(1)(a) (herein "first-degree arson"); (2) arson resulting in great bodily harm, in violation of Fla. Stat. § 806.031(2) (herein "arson causing great bodily harm"); (3) grand theft, in violation of Fla. Stat. § 812.014; and (4) four counts of attempted manslaughter, in violation of Fla. Stat. §§ 782.07 and 777.04 [ECF No. 1-5 pp. 2–3].  Following a four-day trial in July 2014, the jury convicted Petitioner of all charges except for the grand theft charge, which the State

---

[2] This Order incorporates the uncontested factual and procedural background of Petitioner's Report [ECF No. 16 pp. 1–2].

dismissed prior to trial [ECF No. 9 pp. 1–2; ECF No. 1-9 (verdict form); ECF No. 11-1 (trial transcripts)].

In August 2014, the Circuit Court for the Nineteenth Judicial Circuit in and for Martin County, Florida, sentenced Petitioner to a total sentence of sixty-five years' imprisonment— comprised of consecutive sentences of 30 years' imprisonment for first-degree arson; 15 years' imprisonment for arson causing great bodily harm; and five years' imprisonment for each of the four attempted manslaughter convictions [ECF No. 1-10 pp. 1–8; ECF No. 11-1 p. 1092].   This sentence represented the maximum allowable sentence on the six counts of conviction.

### B.  State Direct Appeal

In January 2015, Petitioner appealed his convictions and sentences to Florida's Fourth District Court of Appeal [ECF No. 10-1 pp. 8–57].  Petitioner argued that (1) his conviction for both first-degree arson and arson causing great bodily harm violated the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution; (2) his rights were violated when a video recording of Petitioner's police interrogation was presented to the jury; and (3) his four consecutive convictions for attempted manslaughter violated his substantive due process rights [ECF No. 10-1 pp. 8–57].  In March 2016, the Fourth District Court of Appeal affirmed Petitioner's convictions and sentences without a written opinion [ECF No. 10-1 p. 98].  *Haas v. State*, 189 So. 3d 785 (Fla. Dist. Ct. App. 2016).  Petitioner sought review before the U.S. Supreme Court, which denied certiorari in October 2016.  *Haas v. Florida.*, 37 S. Ct. 204 (2016).

### C.  State Post-Conviction Proceedings

In March 2017, Petitioner moved for post-conviction relief in state court pursuant to Florida Rule of Criminal Procedure 3.850 [ECF No. 10-1 p. 135].[3]  Petitioner asserted eleven grounds for relief in his amended motion, including, as relevant here: (1) a claim that trial counsel was ineffective in failing to object to imposition of the subject arson convictions; (2) a claim that trial counsel was ineffective for failing to object to the imposition of four consecutive sentences for attempted manslaughter; (3) a claim that trial counsel was ineffective for failing to object to the prosecution's comments on the Petitioner's right to remain silent; and (4) a claim that trial counsel was ineffective for failing to move to suppress the video recording of Petitioner's interrogation [ECF No. 1-10 pp. 135–183].  The trial court denied Petitioner's motion for post-conviction relief on June 11, 2019 [ECF No. 1-12].  Petitioner appealed the trial court's denial [ECF No. 1-10 p. 264].  The Fourth District Court of Appeal affirmed on March 5, 2020, without opinion [ECF No. 10-1 p. 266; ECF No. 1-13 (mandate)].  The Fourth District's decision—and the trial court's reasoned decision below—is the decision under review in this habeas proceeding because the Fourth District did not issue a written opinion.  *See Wilson v. Sellers*, 584 U.S. 122, 128 (2018) (directing federal habeas courts to employ a "look through presumption" to the last related state-court decision containing a relevant rationale and then to presume that the unexplained decision adopted the same reasoning).

---

[3] There was an earlier motion for post-conviction relief filed in December 2016, which the Fourth District dismissed [ECF No. 10-1 p. 4].

**D**. **Instant Habeas Petition**

On January 8, 2021, Petitioner filed the instant application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [ECF No. 1]. The Petition is ripe for adjudication, as is the Report recommending denial of the Petition [ECF Nos. 9, 14–16, 20].[4]

## STANDARD FOR REVIEWING MAGISTRATE JUDGE'S REPORT

To challenge the findings and recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the proposed findings and recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). A district court reviews de novo those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1). To the extent a party fails to object to parts of the magistrate judge's report, the Court may accept the recommendation so long as there is no clear error on the face of the record. *Macort*, 208 F. App'x at 784. Legal conclusions are reviewed de novo, even in the absence of an objection. *See LeCroy v. McNeil*, 397 F. App'x 554, 556 (11th Cir. 2010); *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

## SUBSTANTIVE LEGAL STANDARDS

**A.**    **28 U.S.C. § 2254**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") "recognizes a foundational principle of our federal system: state courts are adequate forums for the vindication of federal

---

[4] Respondent concedes that the Petition is timely and that Petitioner exhausted state court remedies [ECF No. 9 pp. 4–5; ECF No. 1-13]. The Report acknowledges as much, and neither party challenges those correct procedural determinations [*see* ECF No. 10-1 pp. 8–58, 134–183, 264–74].

rights." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.* at 16. Federal courts can grant habeas relief "only when a state court blundered in a manner so well understood and comprehended in existing law and was so lacking in justification that there is no possibility fair-minded jurists could disagree." *Tharpe v. Warden*, 834 F.3d 1323, 1338 (11th Cir. 2016) (internal quotation marks omitted).

Under the standard of review for a § 2254 petition, this Court is precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under the framework set forth by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (citing *Williams*, 529 U.S. at 405). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47 (2010). Once the governing legal principle is identified, the federal court must determine whether the state court's adjudication is "contrary to" the identified governing legal principle or whether the state court "unreasonably applie[d] that principle to the facts of the [] case." *See Williams*, 529 U.S. at 412–13 (O'Connor, J., concurring). This happens when the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of

the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams*, 529 U.S. at 405–06.  This reasonableness determination is objective, and a federal court may not issue a writ of habeas corpus simply because it concludes in its independent judgment that the state court was incorrect. *Williams*, 529 U.S. at 410.  In other words, it matters not that the state court's application of clearly established federal law was incorrect so long as that misapplication was objectively reasonable. *Id.* ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

In sum, AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal footnote omitted).  The Eleventh Circuit "has stressed that in applying AEDPA deference federal courts are not to take a magnifying glass to the state court opinion or grade the quality of it." *Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1350 (11th Cir. 2019).

B.      *Brecht* **Harmless Error Review**

In addition to the requirements imposed by AEDPA, when a state court has ruled on the merits of a state prisoner's claim, a federal court cannot grant relief unless the petitioner also demonstrates that any error made by the state trial court had a "substantial and injurious effect or influence" on the jury's verdict. *Brown v. Davenport*, 142 S. Ct. 1510, 1519 (2022); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  To accomplish that, a petitioner must persuade a federal court that he or she suffered "actual prejudice" from the alleged error—a standard that necessarily requires petitioner to show that "a federal habeas court itself harbors grave doubt at the petitioner's verdict" based on the "whole body of law" (without being limited to Supreme Court precedents as of the time the state court renders its decision, as is the case under AEDPA).  *Davenport*, 142 S.

Ct. at 1525.  In short, a "federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA.  But to *grant* relief, a court must find that the petition has cleared both tests."  *Id*. at 1524 (emphases in original); *see also Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012) ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

## DISCUSSION

Petitioner asks this Court to vacate his judgment and sentences pursuant to 28 U.S.C. § 2254.  Petitioner raises the following grounds for relief:

**Ground 1**: Petitioner's convictions for first-degree arson of a dwelling and arson causing great bodily harm violates the Fifth Amendment's prohibition against double jeopardy.

**Ground 2**: Petitioner's four convictions for attempted manslaughter violate his substantive due process rights.

**Ground 3**: Petitioner received ineffective assistance of counsel as a result of defense counsel failing to object to the interrogation video that was admitted into evidence in its entirety.

**Ground 4**: Petitioner received ineffective assistance of counsel as a result of defense counsel failing to object to the prosecutor's comments in closing on Petitioner's right not to testify.

[ECF No. 16 p. 7; *see* ECF No. 3].

For the reasons that follow, all four grounds are denied.  The Court acknowledges substantial questions as to Ground One but ultimately denies relief based on the federal habeas standards of review and the deference afforded to Florida's appellate courts in their interpretation of Fla. Stat. § 806.031(3).

## I.      Ground One: Double Jeopardy

Petitioner argues that his convictions for first-degree arson under Fla. Stat. § 806.01(1)(a) (Count 1) and arson causing great bodily harm under Fla. Stat. § 806.031(2) (Count 2) violate the prohibition against double jeopardy, because first-degree arson is a lesser included offense of the crime of arson causing bodily injury [ECF No. 1-1 p. 16].  Respondent counters, and the Report agrees, that Petitioner's convictions do not violate double jeopardy, because Fla. Stat. § 806.031(3) embodies the clear intent of the Florida legislature to allow cumulative punishments for multiple arsons arising from a single incidence of criminal behavior [ECF Nos. 9, 16].  *See* Fla. Stat. § 806.031(3).

The Court reviews this legal determination de novo.  28 U.S.C. § 636(b)(1).  The question of whether punishments are "multiple" for purposes of double jeopardy is one of legislative intent, *Johnson*, 467 U.S. at 499, and courts must "presume that the legislature says in a statute what it means and means in a statute what it says there," *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).  Given the interplay between the Fifth Amendment and the relevant state statutory provisions, this Order begins with the legal principles underlying the Double Jeopardy Clause and *Blockburger*, followed by the applicable state statutes and caselaw.

### A.  Double Jeopardy Clause and *Blockburger*

The Fifth Amendment to the United States Constitution guarantees that no person "shall be subject for the same offense to be twice put in jeopardy of life or limb," U.S. Const. amend. V, and applies to the states through the Fourteenth Amendment, *see, e.g.*, *Benton v. Maryland*, 395 U.S. 784, 787 (1969).  The Double Jeopardy guarantee ensures that criminal defendants are not doubly punished for the same offense.  *Jones v. Thomas*, 491 U.S. 376, 381 (1989).  The constitutional protection against double jeopardy, however, "does not prohibit cumulative

punishments for a single incidence of criminal behavior when the legislature clearly intends to prescribe cumulative punishments." *Williams v. Singletary*, 78 F.3d 1510, 1512 (11th Cir. 1996). "Legislatures, not courts, prescribe the scope of punishments," *Missouri v. Hunter*, 459 U.S. 259, 369 (1983); thus, "the first step of the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense," *Garrett v. United States*, 471 U.S. 773, 778 (1985); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) ("The question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent.").

Absent a clear indication of legislative intent, courts apply the test announced in *Blockburger v. United States*, 284 U.S. 299 (1932), to determine whether convictions arising from a single criminal incident may be cumulatively imposed. *See Albernaz v. United States*, 450 U.S. 333, 340 (1981); *Williams*, 78 F.3d at 1513. Under *Blockburger*, courts analyze whether "each offense contains an element not contained in the other"; if the offenses do not, they are treated as the same offense and double jeopardy prohibits cumulative punishment. *Id.*; *United States v. Dixon*, 509 U.S. 688, 696 (1993). As relevant here, in the case of two crimes deemed a greater and a lesser included offense, "the lesser offense . . . requires no proof beyond that which is required for conviction of the greater." *Brown v. Ohio*, 432 U.S. 161, 168 (1977). "The greater offense is therefore by definition the same for purposes of double jeopardy as any lesser offense included in it." *Id.*

**B. Relevant Florida Statutory Background**

Petitioner was convicted in Count 1 for first-degree arson, in violation of Fla. Stat. § 806.01(1)(a). That statute makes it a first-degree felony for "[a]ny person" to "willfully and unlawfully, or while in the commission of any felony, by fire or explosion, [to] damage[s] or cause[] to be damaged (a) [a]ny dwelling, whether occupied or not, or its contents." Fla. Stat.

§ 806.01(1)(a).  The statute does not further define the offense [*see* ECF No. 9 p. 21].  The statute

also contains a second-degree variety criminalizing an arson of a structure where the defendant

lacks reasonable grounds to believe such structure is occupied by a human being.  *Id.* § 806.01(2).

Petitioner was convicted in Count 2 for arson causing great bodily harm, in violation of

Fla. Stat. § 806.031(2).  Under that statute, "[a] person who perpetrates any arson that results in

great bodily harm . . . to a firefighter or any other person, regardless of intent or lack of intent to

cause such harm, is guilty of a felony of the second degree, punishable as provided in s. 775.082,

s. 775.083, or s. 775.084."  *Id.* § 806.031(2).  Section 806.031(3) also contains the following

provision, on which Respondent relies as evidence of congressional intent in favor of separate

sentences:

> Upon conviction and adjudication of guilt, a person may be sentenced separately,
> pursuant to s. 775.021(4), for any violation of this section and for any arson
> committed during the same criminal episode.  A conviction for any arson, however,
> is not necessary for a conviction under this section.

*Id.* § 806.031(3).  Section 806.031(3), given its internal cross reference, takes us to the "rules of

construction" for Florida crimes as delineated in Fla. Stat. § 775.021(4).  *Id.* § 775.021.  That

statute provides, in part, as follows:

> (4)(a)   Whoever, in the course of one criminal transaction or episode, commits an
> act or acts which constitute one or more separate criminal offenses, upon conviction
> and adjudication of guilt, shall be sentenced separately for each criminal offense;
> and the sentencing judge may order the sentences to be served concurrently or
> consecutively.  For the purposes of this subsection, offenses are separate if each
> offense requires proof of an element that the other does not, without regard to the
> accusatory pleading or the proof adduced at trial.
>
> (b)   The intent of the Legislature is to convict and sentence for each criminal
> offense committed in the course of one criminal episode or transaction and not to
> allow the principle of lenity as set forth in subsection (1) to determine legislative
> intent.  Exceptions to this rule of construction are:
>
> 1.      Offenses which require identical elements of proof.
> 2.      Offenses which are degrees of the same offense as provided by statute.

3.  Offenses which are lesser offenses the statutory elements of which are
subsumed by the greater offense.

*Id.*§ 775.021(4)(a)–(b).

As a final point, the only two arson statutes in Florida's criminal code are the statutes

referenced here—Fla. Stat. § 806.01 and Fla. Stat. § 806.031 [*see* ECF No. 9 p. 21 (explaining that

common law arson was superseded by statute)].  *See* Fla. Stat. § 806.01(1)-(2); *see also* Fla. Stat.

§ 775.01 (abrogating common law offenses where an offense is covered by statute).  Further,

Florida's code does not contain a definition for "any arson" as referenced in Fla. Stat. § 806.031(3).

**C.  Applicable Florida Case Law, including the Post-Conviction Ruling under Review**

The meaning and interplay between the foregoing Florida statutes forms the double

jeopardy question in this case.  The Court briefly reviews this landscape below.

Section 775.021(4) of the Florida statutes, quoted above, is understood by Florida courts

to be the Florida legislature's express codification of the test announced in *Blockburger v. United*

*States*.  *Gordon v. State*, 780 So. 2d 17, 19–20 (Fla. 2001) (citing *Gaber v. State*, 684 So. 2d 189,

192 (Fla. 1996) ("[A]bsent an explicit statement of legislative intent to authorize separate

punishments for two crimes, application of the *Blockburger* 'same-elements' test pursuant to

section 775.021(4) . . . is the sole method of determining whether multiple punishments are

double-jeopardy violations.")).  Thus, Fla. Stat. § 775.021(4)(b) carves out an exception to the

legislature's general intent to punish crimes separately when, as relevant here, the lesser offense is

"subsumed by the greater offense." Fla. Stat. § 775.021(4)(b)(3); *see Brown v. State*, 569 So. 2d

1320, 1322 (Fla. Dist. App. Ct. 1990) (quoting *State v. Baker*, 452 So. 2d 927 (Fla. 1984) ("Where

an offense is not a necessarily lesser included offense, based on its statutory elements, the intent

of the legislature clearly is to provide for separate convictions and punishments for the two

offenses")).  In other words, Florida law says what federal law has always required: a criminal

defendant may not be punished twice for the same offense absent clear legislative intent to the contrary. *Brown*, 432 U.S. at 165.

The legislative understanding of Fla. Stat. § 806.031(3), on the other hand, is not so widely understood. Respondent has not offered, nor has this Court found, a decision by the Florida Supreme Court resolving the question whether Fla. Stat. § 806.031(3) indicates a clear legislative intent to sentence first-degree arson and arson causing great bodily harm cumulatively. That leaves this Court "bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983). To the Court's knowledge, only two Florida decisions have faced this question, both from the Fourth District Court of Appeal, reaching seemingly contrary holdings. The first is *Abbate v. State*, 82 So. 3d 886 (Fla. Dist. App. Ct. 2011), and the second is the post-conviction court's decision as to the Petitioner in this case.

In *Abbate*, the defendant pleaded guilty to second-degree arson in violation of Fla. Stat. § 806.01(2) and arson causing great bodily harm in violation of Fla. Stat. § 806.031(2). 82 So. 3d 886, 887 (Fla. Dist. App. Ct. 2011). The defendant unsuccessfully moved in the trial court to withdraw his plea. *Id.* at 888. On appeal, the defendant argued that his guilty plea for both offenses violated double jeopardy. *Id.* at 887. The State countered, as Respondent does here, that the language contained in Fla. Stat. § 806.031(3) reflects the legislature's intent to allow for separate punishment for any arson arising from the same criminal incident. *Id.* at 888. The court in *Abbate* disagreed with that view, opting instead to read Fla. Stat. § 775.021(4)(b)(3) as embodying the legislature's true intent to prohibit cumulative punishment for both the greater and lesser included offense. *Id.* at 888–89. The *Abbate* court provided the following reasoning for its double jeopardy

13

conclusion: "[s]econd-degree arson is a lesser offense of arson resulting in injury to another because the statutory elements of second-degree arson as provided in section 806.01(2) are subsumed by the greater offense of arson resulting in injury to another as provided in section 806.031(2)." *Id.* In sum, the *Abbate* court rejected Fla. Stat. § 806.031(3) as overriding the more general legislative directive that courts must apply the same-elements test to resolve double jeopardy questions, as codified in Fla. Stat. § 775.021(4). *Id.*

In Petitioner's case, the state post-conviction court did not grapple with the seemingly contrary holding in *Abbate*, because it determined that Fla. Stat. § 806.031(3) evidenced clear legislative intent in favor of consecutive sentences, thus apparently obviating the need for the same elements test under *Blockburger* [ECF No. 1-2 pp. 3–4]. The substance of the post-conviction court's rationale is reproduced below:

> The prevailing standard for determining the constitutionality of multiple convictions for offenses arising from the same criminal transaction is whether the Legislature "intended to authorize separate punishments for the two crimes." *M.P. v. State*, 682 So. 2d 79, 81 (Fla. 1996). Section 806.031(3), Florida Statutes, provides that: Upon conviction and adjudication of guilt a person may be sentenced separately, pursuant to s. 775.021(4), for any violation of this section and for any arson committed during the same criminal episode. § 806.031(3), Fla. Stat. The legislative intent is clear and unambiguous. Furthermore, this issue was raised on direct appeal and the conviction was affirmed. Additionally, the due process claim should've been brought on appeal. Therefore, the Defendant is not entitled to relief.

[ECF No. 1-12 pp. 3–4 (cleaned up); ECF No. 1-12 pp. 3–4 (also incorporating State's response at ECF No. 10-1 pp. 184–225)]. As noted, the Fourth District Court of Appeals affirmed Petitioner's conviction without a written opinion [ECF No. 10-1 p. 98], and that affirmance (with the built-in "look through" presumption) constitutes an adjudication on the merits entitled to deference under AEDPA. *See Harrington v. Richter*, 562 U.S. 86, 99 (2011); *Wilson*, 584 U.S. at 125–126, 128 (applying "look through" presumption).

14

### D.  Double Jeopardy Analysis

The ultimate question presented in Ground One is whether the post-conviction court unreasonably applied federal law when it found that Fla. Stat. § 806.031(3) reflects the state legislature's clear intent, in cases of a singular criminal episode, to punish first-degree arson, Fla. Stat. § 806.01(1)(a), and arson causing great bodily harm, *see* Fla. Stat. § 806.031(3), separately— thus rendering unnecessary the application of the same-elements test announced in *Blockburger*. Upon full review, there is a substantial question as to whether the post-conviction court misapplied federal law in that manner.  A certificate of appealability is therefore warranted on that question. Nevertheless, although the matter is extremely close, the Court ultimately denies Ground One because of the deference owed by federal courts under AEDPA to state court applications of federal law and, more generally, to state court interpretations of their own laws.  Put another way, because one can conceive of at least some plausible basis to support the postconviction court's determination that Fla. Stat. § 806.031(3) authorizes cumulative punishment in this instance, the Court elects to deny habeas relief.  The Court offers the following observations to the extent they shed light on the certified question.

First, to recap, *Blockburger* requires courts, *absent a clear indication of legislative intent*, to conduct a "same elements test" to see if the offenses at issue—here, first-degree arson and arson causing great bodily harm occurring in the same criminal episode or transaction—should be treated as the same offense for purposes of imposing cumulative punishment.  That requires an element-by-element evaluation of the two offenses to see whether each crime requires proof of an element that the other one does not. Put another way, when the State proves the offense of arson causing great bodily harm, does it necessarily prove all the elements of first-degree arson?  *See* Fla Stat. §§ 806.01(1)(a), 806.031(2).  If that is the case, then first-degree arson is the lesser included

offense because it requires no proof beyond that which is necessary for conviction of arson causing great bodily harm.  In the context of the Double Jeopardy Clause, a greater offense and a lesser included offense are considered the "same offense."  *United States v. Kaiser*, 893 F.2d 1300, 1303 (11th Cir. 1990).  The Fifth Amendment prohibition against double jeopardy is violated when a defendant is doubly punished for the same offense.  *Thomas*, 491 U.S. at 381.

Second, the post-conviction court never conducted a *Blockburger* same-elements analysis because it concluded that Fla. Stat. § 806.031(3) provided "clear and unambiguous" legislative intent in favor of imposing separate sentences in this context [ECF No. 1-12 pp. 3–4].  There is significant reason to question this conclusion.  As reflected above, Fla. Stat. § 806.031 is the arson causing great bodily harm statute.  That statute says, as relevant here, that a person who perpetrates "any arson" resulting in great bodily harm, regardless of intent, is guilty of arson causing great bodily harm.  Fla. Stat. § 806.031.  Section 806.031(3) then goes on to say—and this is the provision on which the post-conviction court relied to find clear intent—that "[u]pon conviction and adjudication of guilt, a person may be sentenced separately, pursuant to s. 775.021(4), for any violation of this section and for any arson committed during the same criminal episode."  *Id.* § 806.031(3).  The post-conviction court's analysis seems to stop there, finding clear legislative intent in favor of separate sentences.  But the plain text of Fla. Stat. § 806.031(3) expressly (and without qualification) incorporates the separate-sentence provision in Fla. Stat. § 775.021(4)—and that incorporated subsection, read plainly and in its entirety, directs sentencing courts to conduct the very *Blockburger* test the post-conviction court declined to do here.  For ease of reference, the full text of Fla. Stat. § 775.021(4) is reproduced again below:

> (4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or

consecutively. *For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not*, without regard to the accusatory pleading or the proof adduced at trial.

(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. *Exceptions to this rule of construction are*:
    1. Offenses which require identical elements of proof.
    2. Offenses which are degrees of the same offense as provided by statute.
    3. *Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.*

Fla. Stat. § 775.021(4) (emphases added).

The net effect of this combined statutory language is to direct separate sentences *except* where the lesser offense is subsumed by the greater, which appears to require a same-elements *Blockburger* test as conducted in *Abbate*. 82 So. 3d at 888–89 (permitting a defendant to withdraw his guilty plea on double jeopardy grounds after concluding that second-degree arson was subsumed by the elements of arson causing great bodily harm) (citing Fla. Stat. § 775.021(b)(3)). Put another way, the "clear legislative intent" in favor of separate sentences—which Respondent says derives from Fla. Stat. § 806.031(3)—does not provide much clarity in the end, because that statute and its incorporated cross-reference to Fla. Stat. § 775.021(4) ultimately requires a court to apply the *Blockburger* same-elements test in evaluating whether the lesser offense (here, first-degree arson) is "subsumed by the greater offense" (here, arson causing great bodily harm). That is what the *Abbate* court did when it found that the elements of second-degree arson were subsumed by arson causing great bodily harm, and there is nothing in that decision limiting its rationale to second-degree arson as Respondent seems to suggest [ECF No. 9 pp. 20–23]. 82 So. 3d at 888–89.[5]

---

[5] On this point, the Report takes the position that Petitioner's reading of the relevant statutes, if adopted, would render the following language in Fla. Stat. § 806.031(3) superfluous: "Upon

Third, if the Court is correct that the plain language of Fla. Stat. § 806.031(3) and its incorporation of the entirety of Fla. Stat. § 775.021(4) directs the post-conviction court to apply the same-elements test, it is unclear what the outcome of that test would be given the absence of a statutory definition for what constitutes "any arson" in Fla. Stat. § 806.031(2).  Broken down into its elements, the crime of arson causing great bodily harm requires the prosecution to prove that the criminal defendant (1) perpetrated "any arson" and (2) the arson "results in great bodily harm" to a person.  Fla. Stat. § 806.031(2).  Based on this language, it appears that the "any arson" element is proven, quite literally, by proving up the elements of any arson offense under Florida law—and as previously noted, there are only two possible arson offenses under Florida law (first- and second-degree).  *See supra* p. 12.  *Abbate* suggests, and Respondent concedes, that the "any arson" element under Fla. Stat. § 806.031(2) can be satisfied by proving the elements of second-degree arson [ECF No. 9 p. 23].  *Abbate*, 82 So. 3d at 887 (stating that "[s]econd degree arson is a lesser offense of arson resulting in injury to another because the statutory elements of second-degree arson as provided in section 806.01(2) are subsumed by the greater offense of arson resulting in injury to another as provided in section 806.031(2)").  Respondent does not concede

_____

conviction and adjudication of guilt, a person may be sentenced separately, pursuant to s. 775.021(4), for any violation of this section and for any arson committed during the same criminal episode."  [ECF No. 16 pp. 12–13].   This is so, the Report suggests, because the underlying arson (either first- or second-degree arson in Fla. Stat. § 806.01) would always be the lesser included offense of arson causing great bodily harm [ECF No. 16 pp. 12–13].  The Court acknowledges that courts are reluctant to interpret any word or phrase in a statute in a way that renders that word or phrase meaningless.  But the Court does not agree that Petitioner's reading reduces Fla. Stat. § 806.031(3) to zero.  That statute continues to direct courts to impose sentences "pursuant to s. 775.021(4)," which as noted codifies the *Blockburger* same-elements test.  Fla. Stat. § 775.021(4).   The ultimate result of a court's application of *Blockburger* is thus a matter of Fla. Stat. § 775.021(4).  In the end, it could be that the ultimate practical effect of applying Fla. Stat. § 775.021(4) is that a defendant who commits an arson resulting in injury to another will be sentenced only for that offense—not also sentenced separately for destroying a structure or dwelling arising from the same criminal episode.   But that reality is a consequence of Fla. Stat. § 775.021(4)—not an obvious indicator of surplusage as to Fla. Stat. 806.031(3).

the additional point, however, that "any arson" may be established by proving the elements of first-degree arson, observing that *Abbate* had before it only a second-degree arson offense (not a first degree arson offense). But "any" is an expansive term, and the Court is hard pressed to see a textual reason to believe that "any arson" would not cover first-degree arson as well. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) ("We have previously noted that '[r]ead naturally, the word "any" has an expansive meaning, that is, 'one of some indiscriminate or whatever kind.'"). Nor is there anything in *Abbate* to indicate that its same-elements analysis would not apply in the same way to first-degree arson. Plugging all of this into a hypothetical *Blockburger* same-elements test, the result would be that the only element of arson causing great bodily harm that is not also an element of first-degree arson is the requirement that the arson resulted in great bodily harm. But that only addresses half of the *Blockburger* inquiry. There still needs to be an element in first degree arson that is not also an element in arson resulting in bodily injury—and that is where the question surrounding the meaning of "any arson" comes back into the picture. If "any arson" means "any arson"—which it seems that it should—then there appears to be no element in first-degree arson that does not also exist in arson resulting in great bodily harm. And if that is true, the offenses of first-degree arson and arson causing great bodily harm would be treated as the same for Double Jeopardy purposes, precluding punishment for both.

Respondent's argument for why first-degree arson is excluded from the phrase "any arson" appears to be that the baseline for satisfying the "any arson" element in arson causing great bodily injury is the elements of second-degree arson and nothing else [ECF No. 9 p. 23]. But Respondent offers no support in the text of Fla. Stat. § 806.031(2) or in Florida caselaw for that position. Respondent then gestures to a potential distinction between first- and second-degree arson, implying that one requires proof of a "structure" (second-degree) whereas the other requires proof

of a "dwelling" (first-degree) [ECF No. 9 p. 23].  Even accepting that such a variation is material for purposes of *Blockburger*, that argument does not address the textual reality that Fla. Stat. § 806.031(2) uses the word "any arson," without qualification, seemingly capturing both arson offenses under Florida law.  Moreover, the postconviction court made no mention of a dwelling-structure differential; the only property at issue in Petitioner's case is the Blue Water residence, a dwelling;[6] and Respondent's reading would lead to the odd and atextual result that arson resulting in great bodily harm would be triggered only by burning a structure, not a dwelling.  None of these arguments moves the needle in favor of Respondent's position.

The Court thus returns to the fundamental question: did the postconviction court in Petitioner's case unreasonably apply federal law by concluding, based on Fla. Stat. § 806.031(3), that no *Blockburger* test was necessary because the Florida legislature clearly authorized cumulative punishments?  Although weak, there are plausible reasons to suggest that it did not.  First, as the Report indicates, Fla. Stat. § 806.031(3) does appear to contemplate separate sentences in some form.  As noted, the statute provides that "a person *may be sentenced separately*, pursuant to s. 775.021(4) for any violation of this section and for any arson committed during the same criminal episode."  Fla. Stat. § 806.031(3) (emphasis added).  And second, the only other Florida case to address this area of the law, *Abbate*, addressed a challenge to Double Jeopardy as between arson causing bodily harm and second-degree arson (not arson causing bodily harm and first-

---

[6] The Blue Water residence was treated as a dwelling in the jury instructions for Petitioner's first-degree arson conviction and then treated as a structure for purposes of Petitioner's conviction for arson causing great bodily harm [*see* ECF No. 11 pp. 975–76; ECF No. 1-4 (Jury Instructions)]. The same proof used to establish that the Blue Water residence was a dwelling for purposes of Petitioner's first-degree arson conviction appears to have been used to prove that Petitioner perpetrated "any arson" for purposes of his conviction for arson causing great bodily harm.  In other words, there was no independent showing that the Blue Water residence was a "structure" any more than it was a "dwelling."

degree arson).  82 So. 3d at 888–89.  Both of these contentions have problems; the former requires the Court basically to ignore the cross-reference to Fla. Stat. § 775.021(4) in Fla. Stat. § 806.031(3), and the second requires the Court to find a distinction in *Abbate* that is not there in any discernable sense.   Still, though, the Court is reminded of the highly deferential nature of its review in this posture and concludes, following careful analysis, that Petitioner has not done enough to fully overcome AEDPA's formidable barrier.  *Titlow*, 571 U.S. at 16.  At the end of the day, this case presents largely unanswered questions of state law on issues of criminal punishment, an area traditionally reserved to the States.  And federal courts must pay due respect to a state court's interpretation of its own penal statute, even more so when the issues could be described as arising for the first time in caselaw.

Petitioner's claim in Ground One is denied, although a certificate of appealability shall issue as set forth in Section V of this Order.

## II.    Ground Two: Substantive Due Process

As noted, Petitioner was convicted of four counts of attempted manslaughter, one for each fire fighter who was injured in the course of extinguishing the fire, in violation of Fla. Stat. §§ 782.07 and 777.04 [ECF No. 3 p. 19; ECF No. 1-5 pp. 2–3].   Petitioner challenges these convictions in Ground Two, arguing that his "substantive due process" rights were violated because the relevant statutes did not provide him with fair notice that he could be subjected to four attempted manslaughter convictions arising out of a single incident of arson [ECF No. 3 pp. 19–20].

The Report begins its analysis of Ground Two by concluding that the state post-conviction court erroneously applied a procedural bar to Petitioner's substantive due process claim; thus, the Report analyzes the merits of Ground Two and does not defer to the state post-conviction court's

procedural conclusion that Petitioner was not entitled to relief on his due process claim because it "should've been brought on appeal" [ECF No. 16 p. 14 n.6 ("When state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar."); ECF No. 1-12 p. 4]. On the merits, the Report notes the conclusory nature of Petitioner's argument and determines that Petitioner's convictions for four counts of attempted manslaughter do not offend due process [ECF No. 16 pp. 15–16]. Petitioner objects to the Report's finding on the latter basis, claiming that his due process argument is more "subtle" than the Report acknowledges [ECF No. 20 p. 12]. According to Petitioner, his argument turns on "whether a person of ordinary intelligence would understand that setting fire to a vacant building at a distance from other structures would expose him or her to the offense of attempted manslaughter by act" [ECF No. 20 p. 12]. Respondent does not object to the Report.

To begin, the Court agrees with the Report that the state post-conviction court's procedural bar lacked foundation in the record and is not entitled to deference. On the merits of Ground Two, the Court also agrees with the Report that Petitioner's four convictions for attempted manslaughter do not violate his right to substantive due process.

For a penal statute to comport with Fifth and Fourteenth Amendment Due Process, it must: (1) "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited;" and (2) it must "define the criminal offense . . . in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Precision is not required. *See Stardust, 3007 LLC v. City of Brookhaven*, 899 F.3d 1164, 1176 (11th Cir. 2018). "[G]eneral statements of the law are not inherently incapable of giving fair notice." *United States v. Lanier*, 520 U.S. 259, 271 (1997); *see Colten v. Kentucky*, 407 U.S. 104, 110 (1972) (explaining that due process requirements are not "designed to convert into a

22

constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited"). Rather, "[r]easonably clear, in the due process context means simply that the people must be informed as to what the State commands or forbids so that a person of ordinary intelligence can gear his behavior accordingly." *Chad v. City of Fort Lauderdale*, 66 F. Supp. 2d 1242, 1245 (S.D. Fla. 1998) (citing *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939)).

Section 782.07(1) of the Florida Statutes defines manslaughter as the "killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification . . . and in cases where such killing shall not be excusable homicide or murder[.]" Fla. Stat. 782.07(1); *Stockton v. State*, 544 So. 2d 1006, 1007–08 (Fla. 1989). Florida courts have held that traditional manslaughter is appropriately punished based on the number of victims rather than the number of acts which led to the deaths. *See Bautista v. State*, 863 So. 2d 1180, 1186 (Fla. 2003). Florida law further recognizes that there is a crime of *attempted* manslaughter when the defendant had the requisite intent to commit an "unlawful act." *Taylor v. State*, 444 So. 2d 931, 934 (Fla. 1983). A conviction for attempted manslaughter, however, cannot be sustained when the underlying conduct constitutes "culpable negligence." *Id.* And attempted manslaughter occurs in situations where, if death had occurred, the defendant would be guilty of manslaughter. *Id.*

The ultimate question in resolving Petitioner's Ground Two is whether Fla. Stat. §§ 782.07 and 777.04, "either standing alone or as construed, made it reasonably clear at the relevant time that [Petitioner's] conduct was criminal." *Lanier*, 520 U.S. at 267. The Report is correct in its determination that Florida law provided Petitioner fair notice that he could be convicted of four counts of attempted manslaughter arising from his criminal conduct [ECF No. 16 p. 16]. In

accordance with Florida law, Petitioner had the requisite intent to commit the unlawful act of arson, meaning his attempted manslaughter convictions were not premised on mere culpable negligence. In addition, Florida law is clear that punishment for the crime of manslaughter is appropriately based on the number of victims rather than the number of acts. *See Bautista*, 863 So. 2d at 1186. Petitioner provides no authority for his conclusory, subjective objection to the Report's conclusion that "a person of ordinary intelligence would not expect the act of setting a vacant home in a somewhat remote location on fire to result in being prosecuted for attempted manslaughter by act" [ECF No. 20 p. 13].

The Petition is denied as to Ground Two for the reasons stated in the Report.

### III.   Ground Three:  Ineffective Assistance of Counsel (Interrogation Video)

Petitioner argues in Ground Three that his trial counsel was ineffective for "failing to move to suppress or object to the unredacted video of [Petitioner's] interrogation wherein the trial prosecutor and detectives repeatedly expressed their opinions that Petitioner was guilty" and commented on Petitioner's credibility [ECF No. 16 p. 19 (quoting ECF No. 3 p. 21)].  The state post-conviction court rejected this claim, reasoning as follows:

> [T]he Defendant claims that counsel was ineffective for failing to suppress the video evidence.  He argues that the video allowed into evidence detectives' opinions that he was a liar and that he started the fire.  He argues that a basis for suppression was that the prosecutor was in the video, [sic] called him a liar and stated he could not be trusted.  He claims this could have misled the jury because the prosecutor's credibility would be enhanced by the prestige of the office.

> The Court incorporates by reference the State's response and adopts its reasoning in finding that Defendant has failed to demonstrate that counsel's performance was ineffective for failing to suppress the video evidence.  The Defendant's claim is speculative and conclusory.  His argument is based around being called a liar. Where the commentary is supported by the evidence adduced at trial, the prosecutor is allowed to submit a conclusion drawn from the evidence.  *Zack v. State*, 911 So. 2d 1190, 1205 (Fla. 2005).  The Defendant admitted to lying numerous times in his statements to law enforcement. (Exhibit Y). When considered in context, the prosecutor examined the totality of the Defendant's statement as well as the other

evidence presented and drew a conclusion that he was lying.  Counsel cannot be deemed ineffective for failing to raise a meritless motion. *Zakrzewski v. State*, 866 So. 2d 688, 694-95 (Fla. 2003).  Therefore, [this ground] is denied.

[ECF No. 1-12 pp. 12–13].  The post-conviction court's holding was affirmed without written opinion [ECF No. 10-1 p. 98].  This affirmance constitutes an adjudication on the merits and is entitled to deference under AEDPA.  *Richter*, 562 U.S. at 99.

The Report determines that Petitioner failed to establish either deficient performance or prejudice for trial counsel's failure to object to the interrogation video under the two-prong *Strickland* analysis [ECF No. 16 pp. 19–24].  On the issue of deficient performance, the Report notes that trial counsel used the video interrogation strategically in closing arguments to emphasize Petitioner's refusal to admit guilt in the face of immense pressure from his interrogators [ECF No. 16 p. 21; ECF No 11-1 p. 1002 (Petitioner "maintain[ed] his innocence throughout [the interrogation] . . . even when being wolf packed by four officers in a small room")].  On the issue of prejudice, the Report assesses the overwhelming circumstantial evidence of Petitioner's guilt produced at trial and concludes that Petitioner had failed to establish prejudice [ECF No. 16 pp. 21–23].  Petitioner objects to the Report, arguing that it engaged in post hoc rationalization by characterizing counsel's decision not to object as the product of sound, strategic decision making [ECF No. 16].

Following review, the Court agrees with the Report that Petitioner has failed to establish either prong of the *Strickland* analysis.  To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate: (1) that his counsel's performance was deficient, *i.e.*, the performance fell below an objective standard of reasonableness; and (2) that he suffered prejudice as a result of that deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).  There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions

in the exercise of reasonable professional judgment." *Id.* at 690.  "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Titlow*, 571 U.S. at 18.  "To establish deficient performance, a defendant must show that his counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place." *Cummings v. Sec'y for Dep't of Corrs.*, 588 F.3d 1331, 1356 (11th Cir. 2009); *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (noting "strong presumption" that counsel's performance was reasonable) (internal quotation marks omitted).  A federal court sitting in habeas corpus does not apply *Strickland* de novo, "but rather, through the additional prism of [AEDPA] deference." *Morris v. Sec'y Dep't of Corr.*, 677 F.3d 1117, 1126 (11th Cir. 2012).  Thus, if "fair-minded jurists could disagree about the correctness of the state court's decision, the state court's application of *Strickland* was not unreasonable and AEDPA precludes the grant of habeas relief." *Id.* (citing *Richter*, 562 U.S. at 100–101).

Petitioner has not established that trial counsel's failure to object to the admission of the interrogation video fell below the objective standard of reasonableness.  As the Report notes, Petitioner's counsel made the strategic decision to incorporate the interrogation into closing arguments [ECF No. 16 p. 21 (citing ECF No. 11-1 p. 1002)].  Strategic decisions like that one are entitled to a presumption of reasonableness that can be rebutted only by a showing that "no competent counsel would have made such a choice." *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998); Chandler, 218 F.3d at 1314 ("[C]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'") (quoting *Darden v. Wainwright*, 477 U.S. 168, 186 (1986)).  While

unsuccessful, counsel's use of the interrogation video was a reasonable trial strategy, especially given the overwhelming circumstantial evidence of guilt [*see* ECF No. 16 pp. 22–23].

Like the post-conviction court, this Court is not required to reach the second prong of *Strickland* given the absence of any constitutionally deficient performance.  466 U.S. at 694. Nevertheless, for the sake of completeness, a review of the trial record reveals that exclusion of the video would not have changed the result of the proceeding given the substantial evidence of Petitioner's guilt [ECF No. 11-1].  That evidence includes: (1) Petitioner's confession to a friend that he had started the fire [ECF No. 11-1 p. 936]; (2) statements by Petitioner to others where he said that if he could not have the house no one would [ECF No. 11-1 p. 76 (Shain Haas); ECF No. 11-1 p. 120 (Aaron Grosko)]; (3) security camera footage placing Petitioner's vehicle near the residence near the time of the fire [ECF No. 11-1 pp. 584, 592–597 (Detective Irick)]; (4) phone records showing his cell phone pinged the cell tower near the residence on the night of the fire [ECF No. 11-1 pp. 647–649 (Frank Divincenzo)]; (5) Florida Power & Lighting records demonstrating that the residence had been without power for nearly a month (i.e., ruling out an electrical fire) [ECF No. 11-1 pp. 639, 915]; (6) evidence from an accelerant detection K-9 and forensic lab tests showing that the fire was started using accelerant [ECF No. 11-1 p. 438 (Ross Holt); ECF No. 11-1 p. 908 (Carl Lugviel)]; and (7) the presence of three empty gas cans and tire tracks in the front yard at the residence on the night of the fire in combination with the presence of more gas cans in Petitioner's home and truck bed following execution of a search warrant [ECF No. 11-1 pp. 614–16, 181–83].  In light of this evidence, the Court cannot say that counsel's failure to object to the interrogation video prejudiced Petitioner.  *Julius v. Johnson*, 840 F.2d 1533, 1541 (11th Cir. 1988) ("We do not reach that question because we fail to find that the defendant

was prejudiced in this case. Although the evidence convicting [the defendant] was all circumstantial, it was overwhelming.").

Petitioner's claim in Ground Three is denied for the reasons stated in the well-reasoned Report.

### IV.     Ground Four:  Ineffective Assistance of Counsel (Prosecutor's Comments)

Petitioner argues in Ground Four that his trial counsel was ineffective for failing to object to the prosecution's statement in closing arguments, which Petitioner argues was a comment on his post-arrest silence and/or refusal to testify at trial [ECF No. 3 p. 26].  The relevant excerpt from the trial transcript is reproduced in full in the Report [ECF No. 16 p. 26]. The portion on which Petitioner focuses is as follows: "I proved to you his guilt beyond and to the exclusion of a reasonable doubt without a single word coming out of his mouth" [ECF No. 11-1 p. 991; *see* ECF No. 3 p. 26].

The state post-conviction court reviewed this challenge and concluded that the prosecutor's statement was not a comment on Petitioner's right to remain silent but rather, when read in context, a statement on the evidence [ECF No .1-12 pp. 6–7].  The state post-conviction court interpreted the prosecutor's statement as arguing that he had "already shown the jury enough evidence to prove [Petitioner] was guilty without even talking about all of the statements [Petitioner] gave and the lies he told to law enforcement" [ECF No. 1-12 pp. 6–7].  The Fourth District Court of Appeals affirmed that decision without a written opinion [ECF No. 10-1 p. 98].  That affirmance constitutes an adjudication on the merits entitled to deference under AEDPA.  *Richter*, 562 U.S. at 99.

After evaluating the prosecutor's statement in context, the Report likewise concludes that the prosecutor manifested no intent to comment on the Petitioner's post-arrest silence and that a jury would not have interpreted the statement as such [ECF No. 16 p. 26].  Petitioner's abbreviated

objection in this regard is that the Report erred by analyzing the prosecutor's statement as a comment on Petitioner's silence rather than as a commence on Petitioner's right not to testify [ECF No. 20 p. 19].  The Court agrees with the Report's conclusion on Ground Four.

The Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965).  The Fifth Amendment similarly forbids comment by the prosecution on the failure of the accused to testify at trial. *Marsden v. Moore*, 847 F.2d 1536, 1547 (11th Cir. 1988). But comments by the prosecution "must be examined in context." *United States v. Knowles,* 66 F.3d 1146, 1163 (11th Cir. 1995).

Read in context, the prosecutor did not directly comment on Petitioner's right to remain silent post-arrest or his failure to testify at trial.  Nor was the prosecutor's comment "of such a character that a jury would naturally and necessarily take it to be a comment on" Petitioner's exercise of his Fifth Amendment rights [*see* ECF No. 11-1 at 991]. *Al-Amin v. Warden, Ga. Dep't of Corr.*, 932 F.3d 1291, 1299 (11th Cir. 2019).  As the Report notes, the prosecutor's statement is most reasonably understood as emphasizing the strength of the State's case, even without considering Petitioner's inconsistent statements to law enforcement [ECF No. 16 p. 26].  Thus, any objection to the prosecutor's statement would have likely been denied.  The state post-conviction court did not base its decision "on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  And counsel is not ineffective for failing to raise a meritless claim. *See, e.g.*, *Ladd*, 864 F.2d at 110.  Accordingly, Petitioner's final ground for relief is denied at *Strickland* step one.[7]

---

[7] Petitioner also has failed to meet his burden to show actual prejudice in the guilty verdict from any alleged prosecutorial impropriety in the closing argument to the guilty verdict.

CASE NO. 21-14017-CIV-CANNON/Maynard

### V.       Certificate of Appealability

A certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Where, as here, a court denies a habeas petition on the merits, this standard requires a petitioner to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484.  The Court finds that Petitioner has met this standard on his double jeopardy claim (Ground One) and will issue a limited certificate of appealability on the issue of whether Petitioner's cumulative sentences for first-degree arson in violation of Fla. Stat. § 806.01(1)(a) and arson causing great bodily harm in violation Fla. Stat. § 806.031(2) violate the Fifth Amendment prohibition against double jeopardy.

### CONCLUSION

For the reasons stated above, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition [ECF Nos. 1, 3] is **DENIED**.

2.      The Report [ECF No. 16] is **ACCEPTED** as supplemented herein.

3.      Pursuant to 28 U.S.C. § 2253(c)(2), a certificate of appealability is **ISSUED** limited to Ground One, specifically, whether Petitioner's convictions for first-degree arson in violation of Fla. Stat. § 806.01(1) and arson causing great bodily harm in violation Fla. Stat. § 806.031(2) violate the Double Jeopardy Clause.

4.      Final judgment to be entered separately.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 26th day of November 2024.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

30